FILED
JUN 2 9 2007
6-29-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY SCOTT,<br>         Plaintiff,<br>v.<br>CITY OF CHICAGO, OFFICER JOHN FASSL,<br>OFFICER AL ALMAZAN, OFFICER STEVE<br>BROWNFIELD, OFFICER EDWARD NICOL,<br>and OFFICER LARRY THOMAS,<br>         Defendants. | 07CV3684<br>JUDGE SHADUR<br>MAG. JUDGE BROWN<br><br>JURY DEMAND |

## COMPLAINT

NOW COMES the Plaintiff, LARRY SCOTT, by and through his attorney, BASILEIOS J. FOUTRIS, and complaining of the Defendants, CITY OF CHICAGO, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, states as follows:

### Nature of Action

1. This action is brought pursuant to the Laws of the United States Constitution, specifically through 42 U.S.C. §1983 and 42 U.S.C. §1988, and the Laws of the State of Illinois, to redress deprivations of the Civil Rights of the Plaintiff by the Defendants.

### Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

3. At all relevant times, the Plaintiff was a resident of the State of Illinois in this Judicial District.

1

4. The CITY OF CHICAGO is a municipal corporation located in the State of Illinois. At all relevant times, the CITY OF CHICAGO was the employer of the Defendants, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS. The Defendants, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, were at all relevant times employed by the CITY OF CHICAGO and were duly appointed police officers in the CITY OF CHICAGO acting within the course and scope of their employment and under color of law.

5. All the events giving rise to the claims asserted herein occurred within this Judicial District.

**Facts**

6. On October 2, 2000, the Plaintiff was in the Chicago Ridge police station.

7. As he was exiting the police station the Defendants approached the Plaintiff and placed him under arrest.

8. The Defendants arrested the Plaintiff for murder. There was no probable cause to arrest the Plaintiff.

9. Upon being informed why he was arrested the Plaintiff immediately denied any involvement and denied that he murdered anyone. In fact, the Plaintiff repeatedly denied any involvement in any murder through numerous interrogations over the next forty plus hours.

10. At the time of the arrest there were no identifications or eyewitness accounts that implicated the Plaintiff in the murder. In fact, from the date of the

Plaintiff's arrest until the present there has never been any identification or eyewitness account implicating the Plaintiff in the murder.

11. At the time of the arrest there was no physical evidence that implicated the Plaintiff in the murder. In fact, from the date of the Plaintiff's arrest until the present there has never been any physical evidence implicating the Plaintiff in the murder.

12. The Plaintiff had taken heroine prior to his arrest. When he was arrested the Plaintiff was suffering from heroine withdrawal. Heroine withdrawal is a serious medical condition that requires immediate medical attention. At the time of his arrest the Plaintiff was also suffering from severe nausea, back pain, and a painful abscess on his foot. It was obvious to the Defendants that the Plaintiff needed medical attention.

13. The Plaintiff was taken to a City of Chicago police station upon his arrest. At the station he was interrogated by the Defendants.

14. The Defendants interrogated the Plaintiff numerous times over the next couple of days about the murder. During the interrogations the Plaintiff repeatedly denied any involvement in the murder and repeatedly asked for an attorney. His requests to see an attorney were ignored.

15. When he was not being interrogated the Plaintiff was locked in the interrogation room by the Defendants and left alone for long periods of time. The Plaintiff was also not allowed to use the bathroom by the Defendants, despite repeated requests. As a result, the Plaintiff vomited and urinated on the floor of the interview room. The Plaintiff could not sleep in the room.

16. Following his arrest the Plaintiff repeatedly informed the Defendants that he was a heroine addict, that he had severe medical conditions that required medical

attention, and that he was suffering from severe heroine withdrawal. The Plaintiff repeatedly requested a doctor to treat his severe medical conditions. The Defendants ignored all of the Plaintiff's requests to see a doctor and to receive medical attention. It was obvious that the Plaintiff was suffering and needed medical attention.

17. The Defendants told the Plaintiff that he would be provided with medical attention only in exchange for a statement regarding the murder.

18. While they were interrogating the Plaintiff the Defendants knew that there were no eyewitness accounts, identifications, or physical evidence implicating the Plaintiff in the murder.

19. During the interrogations, the Defendants showed the Plaintiff photos of the murder victim's autopsy and told the Plaintiff that "This is your work".

20. After nearly two days of interrogations in which the Plaintiff denied any involvement in the murder the Defendants transported the Plaintiff to the murder scene. When the Plaintiff arrived at the murder scene the Defendants began accusing the Plaintiff of committing the murder.

21. At that time the Plaintiff was still in need of medical attention, he continued to ask to see a doctor, and it was obvious that the Plaintiff needed medical attention. The Defendants told the Plaintiff that if he admitted to the murder he would be provided with medical attention.

22. The Defendants have admitted that their objective all along was to obtain a confession from the Plaintiff even though they knew that there was no physical evidence, identification, or eyewitness account implicating the Plaintiff in the murder.

23. Approximately 48 hours after his arrest, following repeated denials of involvement in the murder, the lack of any physical, identification, or eyewitness evidence linking him to the murder, and the Defendants repeated statements that medical attention would only be provided if he confessed to the murder, the Plaintiff agreed to provide a statement regarding the murder in return for medical attention. The Plaintiff believed that if he did not provide a statement he would not be provided medical attention. The Plaintiff believed that the only choice he had was to provide a statement to the Defendants which implicated him in the murder.

24. The Defendants verbally narrated to the Plaintiff what had happened to the murder victim. Feeling he had no choice, the Plaintiff provided statements consistent with the verbal narration. The statements were the only evidence that implicated the Plaintiff in the murder. After the Plaintiff provided the narrated statements the Defendants instituted criminal proceedings against the Plaintiff despite the lack of probable cause.

25. The Plaintiff was ultimately convicted of murder. The conviction relied on the statements that were improperly obtained by the Defendants in which the Plaintiff was unlawfully induced to incriminate himself. That conviction was eventually overturned on appeal on June 30, 2006. The charges against the Plaintiff were dismissed in a manner indicative of the Plaintiff's innocence in March 2007.

26. As a proximate result of the Defendants' acts the Plaintiff suffered damages, including spending approximately six and a half years in jail for a crime he did not commit.

27. All of the above Defendants' acts were intentional, willful and wanton.

## COUNT I
## 42 U.S.C. §1983- Coerced Confession

28. The Plaintiff realleges Paragraphs 1 through 27, inclusive, and incorporates those Paragraphs herein, as though fully stated as this Paragraph 28.

29. As described in the preceding paragraphs the conduct of the Defendants, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, acting under color of law and in the course and scope of their employment as CITY OF CHICAGO Police Officers, violated the Plaintiff's rights as guaranteed by the United States Constitution in that they unlawfully coerced the Plaintiff to incriminate himself.

30. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to the Plaintiff's constitutional rights.

31. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the Plaintiff's constitutional rights.

32. As a result of the Defendants', OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, acts, as well as the CITY OF CHICAGO'S policies, procedures, customs and practices, the Plaintiff, LARRY SCOTT, was improperly coerced to incriminate himself.

33. The misconduct described in this Count was undertaken pursuant to the policies, procedures, customs and practices of the City of Chicago and its Police Department in that:

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference, and by hiring unqualified individuals as police officers;

b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting the Plaintiff;

c. Chicago Police Officers accused of inappropriate or illegal conduct can be confident that the City of Chicago will not investigate those accusations in earnest, will not recommend or seek out criminal charges against Chicago Police Officers, and will refuse to recommend discipline even where the Officer has engaged in inappropriate or illegal conduct;

d. As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases, and does not recommend or seek out criminal charges against its Officers;

e. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

f. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

34. As a proximate result of one or more of the aforesaid acts and omissions, the Plaintiff, LARRY SCOTT, sustained injuries and damages, including spending approximately six and a half years in jail for a crime he did not commit.

WHEREFORE, the Plaintiff, LARRY SCOTT, demands judgment in his favor and against the Defendants, CITY OF CHICAGO, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, awarding compensatory damages, attorney fees, and costs against the Defendants, punitive damages against OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, such orders as are necessary to rectify the CITY OF CHICAGO'S unconstitutional policies, procedures, customs and practices, and any other relief this Court deems just and appropriate.

## COUNT II
### 42 U.S.C. §1983- Conscience Shocking Behavior

35. The Plaintiff realleges Paragraphs 1 through 34, inclusive, and incorporates those Paragraphs herein, as though fully stated as this Paragraph 35.

36. As described above, the Defendants', OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, acts constituted conscience shocking behavior which violated the Plaintiff's rights as guaranteed by the United States Constitution.

37. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to the Plaintiff's constitutional rights.

38. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the Plaintiff's constitutional rights.

39. As a result of the Defendants', OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and

OFFICER LARRY THOMAS, acts and conscience shocking behavior, as well as the CITY OF CHICAGO'S policies, procedures, customs and practices, the Plaintiff, LARRY SCOTT, was improperly coerced to incriminate himself.

40. The misconduct described in this Count was undertaken pursuant to the policies, procedures, customs and practices of the City of Chicago and its Police Department in that:

   a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference, and by hiring unqualified individuals as police officers;

   b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting the Plaintiff and the Decedent;

   c. Chicago Police Officers accused of inappropriate or illegal conduct can be confident that the City of Chicago will not investigate those accusations in earnest, will not recommend or seek out criminal charges against Chicago Police Officers, and will refuse to recommend discipline even where the Officer has engaged in inappropriate or illegal conduct;

   d. As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse and/or mistreat citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases, and does not recommend or seek out criminal charges against its Officers;

   e. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

  f.  The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

41. As a proximate result of one or more of the aforesaid acts and omissions, the Plaintiff, LARRY SCOTT, sustained injuries and damages, including spending approximately six and a half years in jail for a crime he did not commit.

WHEREFORE, the Plaintiff, LARRY SCOTT, demands judgment in his favor and against the Defendants, CITY OF CHICAGO, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, awarding compensatory damages, attorney fees, and costs against the Defendants, punitive damages against OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, such orders as are necessary to rectify the CITY OF CHICAGO'S unconstitutional policies, procedures, customs and practices, and any other relief this Court deems just and appropriate.

## COUNT III
### Malicious Prosecution

42. The Plaintiff realleges Paragraphs 1 through 41, inclusive, and incorporates those Paragraphs herein, as though fully stated as this Paragraph 42.

43. As described above, the Defendants, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, arrested and commenced criminal proceedings against the Plaintiff without probable cause. The criminal proceedings were instituted with malice,

and were ultimately dismissed in a manner indicative of the Plaintiff's innocence in March 2007.

44. The misconduct was undertaken by the Defendants, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, under color of law, under the course and scope of their employment as CITY OF CHICAGO Police Officers, was objectively unreasonable, with malice, was undertaken intentionally, and was willful and wanton.

45. As a direct and proximate result of the Defendants' acts the Plaintiff was injured, suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages.

46. Defendant CITY OF CHICAGO is liable as principal for all torts committed by its agents.

WHEREFORE, the Plaintiff, LARRY SCOTT, demands judgment in his favor and against the Defendants, CITY OF CHICAGO, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, awarding compensatory damages and costs against the Defendants, and punitive damages against OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, and any other relief this Court deems just and appropriate.

### COUNT IV
**Indemnification**

47. The Plaintiff realleges Paragraphs 1 through 46, inclusive, and incorporates those Paragraphs herein, as though fully stated as this Paragraph 47.

48. At all relevant times the Defendants, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, were acting under color of law and under the course and scope of their employment.

49. At all relevant times the CITY OF CHICAGO was the employer of the Defendants, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS.

WHEREFORE, the Plaintiff, LARRY SCOTT, pursuant to 745 ILCS 10/9-102, demands judgment in his favor and against Defendant, CITY OF CHICAGO, in the amounts awarded to the Plaintiff against the Defendants, OFFICER JOHN FASSL, OFFICER AL ALMAZAN, OFFICER STEVE BROWNFIELD, OFFICER EDWARD NICOL, and OFFICER LARRY THOMAS, and for whatever additional relief this Court deems just and appropriate.

## JURY DEMAND

The Plaintiff demands a trial by jury on all Counts.

Respectfully submitted by,

_____
BASILEIOS J. FOUTRIS, Attorney for Plaintiff

Basileios J. Foutris
FOUTRIS LAW OFFICE, LTD.
53 W. Jackson, Suite 252
Chicago, Illinois 60604
312-212-1200