IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 3684 |
| | ) |
| CITY OF CHICAGO, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Following the May 28, 2010 approval and issuance of the jointly submitted final pretrial order ("FPTO") in this action, each side has deluged this Court with a host of motions in limine--over two dozen each.[1] This Court's July 20, 2010 memorandum opinion and order ("Opinion I") dealt with Scott's motions, and this Court now turns to defendants' motions.

As in Opinion I, mention is first made of the motions not in dispute (all part of Dkt. 132): Motions 1, 5, 6, 7 and 8. All are granted. Now on to the contested motions.

Motion 2 (part of Dkt. 132)

Motion 2 shifts emphasis from the uncontested Motion 1 by focusing on evidence as to other asserted misconduct by the defendant officers, rather than on police misconduct in general. Even though in real world terms the fact that CRs covering complaints against those officers have been disposed of without

---

[1] Even though counsel for plaintiff Larry Scott ("Scott") assigned only (!) 15 numbers to his motions, the last numbered motion had more than 10 subparts.

adverse findings provides no assurance that the claimed misconduct did not occur (the extraordinarily low percentage of charges that end up sustained has led the system to be viewed with considerable skepticism), Fed. R. Evid. ("Evid. R.") 404(b) properly inhibits the admissibility of "other acts" as well as "other crimes."

At the same time, it is entirely possible that at trial some such matters may qualify for admissibility for purposes other than propensity. Accordingly Motion 2 is granted, subject to its possible revisiting as to specific matters at trial time.

## Motion 3 (part of Dkt. 132)

Motion 3 seeks "to bar evidence, inference or argument regarding an alleged 'Code of Silence.'" Here it is worth noting that the cases cited by defense counsel go back well over a decade (dating from the middle 1990s), while Scott's response (Dkt. 148) draws on much more recent authority (all from this decade, including several issued this year and in the last two years). That shift in the nature of the general judicial response stems from the recognition that there is indeed a tendency for many officers to turn a blind eye or worse to misconduct by fellow officers.

This Court views the motion, framed in generic terms as it is, as at best premature. It is denied, with definitive rulings on specific matters to be made at the time of trial in the

context of the proofs as then developed.

### Motion 4 (part of Dkt. 132)

Motion 4 asks "to bar evidence, inference, or argument regarding the violation of General Orders." That is puzzling, given defense counsel's response to Scott's Motion 6, where they sought to invoke other asserted Chicago Police Department policies to justify the holding of detainees for more extended periods than Supreme Court authority would teach.

In any event, Thompson v. City of Chicago, 472 F.3d 444, 454-55 (7th Cir. 2006), on which defense counsel attempt to rely, places a limited bar on such evidence only in the sense that it does not go to a violation of federal constitutional rights. But in this instance Scott has also advanced state law claims under the supplemental jurisdiction provisions of 28 U.S.C. §1367, and Scott's counsel has adduced Hudson v. City of Chicago, 378 Ill.App.3d 373, 405, 881 N.E.2d 430, 456-57 (1st Dist. 2007) for the proposition that a violation of internal police department rules may be considered in determining whether claimed officer misconduct is willful and wanton. This Court has also previously held that such evidence may be relevant as to the potential imposition of punitive damages as to federal claims (if those have been established independently of the evidence now in question) as well as to state law claims.

Accordingly Motion 4 is denied. Needless to say, any such

3

evidence admitted during trial will be subject to an appropriately cautionary jury instruction.

### Motion 9 (part of Dkt. 132)

Here defendants move to preclude all reference to, and any evidence related to, former Chicago Police Commander Jon Burge ("Burge"), understandably seeking to distance themselves from the notoriety attached to Burge and his very recent federal conviction for perjury, stemming from his denial of the abuse, torture and other violations of civil rights committed at Chicago Police Area 2 by him and by others under his command. Indeed, the opening section of Opinion I, dealing with Scott's motions, mentioned Burge in just that context.

Scott's response (Dkt. 148 at 8-10) brings out the fact that defendant Detective Steve Brownfield ("Brownfield") served and was trained under Burge at Area 2, although Burge was already gone from that division before Scott was arrested for the murder of Jesus Villalobos in October 2000. That would appear to make inquiry relevant, as Scott contends, into whether any changes in training or other facts affecting police conduct (such as new orders or regulations) took place after Burge's departure. That of course is potentially prejudicial to Brownfield, but it must be remembered that Evid. R. 403 frames its balancing test in terms of <u>unfair</u> prejudice (after all, by definition any evidence that is probative and relevant, and hence admissible, is

"prejudicial" in the sense that it adds some weight to one side of the scales of justice). Needless to say, however, any potential evidence in this area is viewed as sensitive and will also call for a suitable cautionary jury instruction.

In sum, Motion 9 is denied in its flat-out terms. Any necessary jury instructions, if such evidence goes in, will be addressed at the time of trial.

### Motion 10 (part of Dkt. 132)

This motion seeks "to bar evidence, inference, or argument that the confession was suppressed in the criminal proceedings because it was coerced." It is based on defense counsel's contention that coercion was not a predicate on which the Illinois Appellate Court overturned Scott's conviction in People v. Scott, 366 Ill.App. 638, 852 N.E.2d 531 (1st Dist. 2006). So framed, that position is extraordinarily myopic, for it rests on defense counsel's impermissibly narrow approach to the concept of coercion.

Opinion I at 11-12, in the course of granting Scott's Motion 3, has quoted at length from the Appellate Court's opinion (id. at 286, 290, 852 N.E.2d at 536, 540) explaining the unconstitutionality of the misconduct engaged in by codefendant Detective John Fassl and how that misconduct rendered Scott's confession involuntary, such as to reverse his convictions. Those determinations establish coercion in the real world sense

5

(as well as in the legal sense), so as to call for the denial of Motion 10. This Court so orders.

### Motion 11 (part of Dkt. 133)

First, after having accurately quoted the Evid. R. 702 criteria for expert qualification (importantly stated in the disjunctive rather than in the conjunctive), defense counsel blithely proceed to ignore all of those. Thus it is simply wrong in those terms to demean witness Barry Hargan ("Hargan") because he "is not a medical doctor and has never been authorized to write prescriptions to treat a medical issue such as heroin addiction or heroin withdrawal" (Motion at 2). It is equally wrong to demean him on the ground that he "is not even a licensed psychotherapist who could treat psychological issues arising from something such as heroin addition" (id.), even while defense counsel acknowledge that Hargan had been so licensed over a substantial period of years before he entered into his current forensic consulting business (a business that has involved his consultation in more than 1,000 cases and his testimony in more than 60 trials, motions, sentencing and administrative hearings, including the guilt and penalty phases of capital homicide cases).

Scott's Response 3-7 marshals an overwhelming array of facts about Hargan's background that demonstrate his obvious qualifications to testify as an opinion witness. It is frankly

6

irresponsible for defense counsel to have labeled him "not qualified."[2]

Next defense counsel urge the absence of a reliable factual foundation for Hargan's opinion because it is principally based on what Scott told him in an interview more than two years after his arrest. But as this Court said in Opinion I at 10 when the shoe was on the other foot--when defendants were advancing the opinions of a prospective witness and plaintiff was arguing against that because the witness had credited one side's version of contested facts:

> It is of course permissible for an opinion witness, in arriving at his or her conclusions, to premise that result on one side's view of contested events--as Magistrate Judge Jeffrey Cole said in Richman v. Sheahan, 415 F.Supp.2d 929, 942 (N.D. Ill. 2006):
>
>> Experts routinely base their opinions on presumptions that are necessarily at odds with their adversary's view of the evidence.
>
> In that way, if a factfinding jury then determines that the facts are in accordance with those assumptions, it can go on to decide whether to credit the opinions that rest on that foundation.

Hence defendants' attempted attack on Hargan in Daubert-Kumho terms falls flat. Motion 11 is denied.

---

[2] As this Court has commented from time to time in the past, some lawyers do not recognize the cloud of doubt that can be cast on their contentions that are arguably viable when they first advance such bootless arguments as those just described in the text.

7

<u>Motion 12 (part of Dkt. 133)</u>

This time defendants seek to bar opinions of Dr. Ghassam Zalzaleh, whom they describe as "a Cook County Jail physician who examined and treated the Plaintiff one time on October 6, 2000, as part of the Plaintiff's in-take process for Cook County jail" (Motion at 4). As defense counsel argue (<u>id</u>.):

> Dr. Zalzaleh was not disclosed as an opinion witness pursuant to Fed. R. Civ. P. 26(a)(2), has not provided a report, and testified he was not retained to provide opinions by Plaintiff. Accordingly, Dr. Zalzaleh's testimony should be limited to his treatment of Plaintiff.

But even if that argument were to be credited, it would prove too much. Dr. Zalzaleh can unquestionably testify to the <u>fact</u>, not opinion, as to what he prescribed for Scott on October 6, 2000 (see his Dep. 36), as well as to the <u>fact</u>, not opinion, that such a prescription is provided for heroin withdrawal. Yet defendants would have it that for Dr. Zalzaleh to connect those dots by saying that he prescribed that medication because of his diagnosis of heroin withdrawal would somehow render that added component inadmissible because of noncompliance with the written report requirements of Fed. R. Civ. P. ("Civ. R.") 26(a)(2)(B).

But that is not the Draconian approach called for by Civ. R. 37(c)(1). <u>Musser v. Gentiv Health Servs.</u>, 356 F.3d 751, 756-58 (7th Cir. 2004), on which defense counsel seek to rely, not only went on to recognize that the treating physician situation does

8

not call for a bright-line automatic disqualification approach (id. at 758 n.3), but it proceeded to analyze whether the absence of the report in that case "was substantially justified or is harmless," in the language of Civ. R. 37(c)(1).

Here it is important to recognize that the diagnosis by Dr. Zalzaleh was not "non-disclosed evidence." Instead it was testified to by him at Scott's criminal trial that was handled by the same law office, that of the Cook County State's Attorney, that now represents defendants here. More directly, on February 17, 2009--before the scheduling of Dr. Zalzaleh's deposition in this case--Scott's counsel in this case wrote a letter to the lead defense lawyer here that specifically listed Dr. Zalzaleh as a Civ. R. 26(a)(2) witness, and the doctor's deposition taken some six weeks later expressly covered that issue.

Defendants' argument here is inappropriately formalistic. Their counsel have failed to identify any harm caused by the noninclusion of Dr. Zalzaleh's diagnosis of heroin withdrawal in a written report, because no demonstrable harm exists.[3] Both

---

[3] Civ. R. 26(b)(2)(C) calls for a written report to be provided "at least 90 days before the date set for trial or for the case to be ready for trial." Here the trial date has not yet been set. Under the circumstances of this case, any requirement that a written report must be provided to cover what both sides well know to be the single aspect of Dr. Zalzaleh's testimony that might be characterized as opinion evidence would appear to be an act of supererogation. Such a superfluous act could be called for only if defense counsel, who surely cannot claim

9

Civ. R. 37(c)(1) and the type of analysis pursued by <u>Musser</u> itself call for the denial of Motion 12, and this Court so orders.

<u>Conclusion</u>

As indicated at the outset, a host of defendants' motions in limine remain to be ruled upon--another 14, even after omitting from the list two motions that defense counsel have seen fit to withdraw. That being the case, this opinion will stop at this point to give both sides' counsel the opportunity to digest the rulings set out here, with another opinion to follow later.

In summary, the disposition of defendants' motions to this point runs this way:

> 1. Motions 1 and 5 through 8 have been granted by agreement.
>
> 2. Motion 2 is granted, subject to a possible revisiting in the context of the trial.
>
> 3. Motions 3, 4 and 9 through 12 are denied.

Because each docket number embraces more than one motion, those rulings correspond to the disposition of those docket numbers in this fashion:

---

surprise in that respect, can identify some arguable harm. But in the absence of a showing of potential harm, that would appear to involve the needless expenditure of time and effort.

(a)  Dkt. 132 is granted in part and denied in part.

(b)  Dkt. 133 is denied in its entirety.

_____
Milton I. Shadur
Senior United States District Judge

Date:  July 27, 2010

11