IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LARRY SCOTT,                    )
                                )
        Plaintiff,            )
                                )
  v.                            )    No.  07 C 3684
                                )
CITY OF CHICAGO, et al.,        )
                                )
        Defendants.           )

## MEMORANDUM OPINION AND ORDER

This Court's July 20, 2010 "Opinion I" dealt with the large number of post-Final Pretrial Order ("FPTO") motions in limine filed by plaintiff Larry Scott ("Scott"), and its July 27 "Opinion II" began the same undertaking as to the even larger group of motions in limine filed by defendants. This memorandum order takes up where Opinion II left off, addressing the remaining motions (Nos. 13 through 28) tendered by defense counsel.

As before, the threshold matter of any uncontested motions should be gotten out of the way. In that respect, Motion 15 (part of Dkt. 134) has been withdrawn by defendants as duplicative of defendants' Motion 18 (also part of Dkt. 134), and Motion 27 (part of Dkt. 143) has also been withdrawn. Now on to the contested motions.

### Motion 13 (part of Dkt. 134)

Defense counsel label this motion as seeking "to bar plaintiff and his witnesses from withdrawing attorney-client

privilege and work product doctrine." "Withdrawing" is an odd way to put the matter--from Motion 1-3, it appears that what is meant by defendants is that Scott, having assertedly invoked the attorney-client privilege and work product doctrine, should be prevented from waiving such assertions now.

What Motion at 2 says on that score, but without providing any portion of Scott's deposition transcript, is this:

> In this matter, Plaintiff made clear during deposition that he was not waiving his attorney-client privilege regarding communications with his counsel. Plaintiff's counsel argued vociferously that Plaintiff was not waiving his attorney-client privilege during deposition. Plaintiff refused to testify at deposition, citing his attorney-client privilege, as to all communications with his counsel including what he may have said regarding coercion, his physical condition while in custody, and any pain he may have been experiencing.

But Scott responds by quoting (Dkt. 150 at 1-2) from page 282 of Scott's deposition transcript, where he testified that he had told his public defender that he was coerced into giving a confession. And more importantly, he so testified based on the statement by defense counsel (the Chief Assistant Corporation Counsel for the City of Chicago) that he had <u>waived</u> the attorney-client privilege by bringing the claim of coerced confession.

Here is the relevant exchange between the lawyers, Basileios Foutris ("Foutris") for Scott and Arlene Martin ("Martin") for defendants, with Foutris objecting on privilege grounds, Martin rejecting that position and Foutris then acceding (Scott Dep. Tr.

2

280-81):

>     MR. FOUTRIS: So I think it can be pretty clearly stated if you ask him, aside from your attorneys, did you tell this to anyone else? I think your answer is going to be no. And I think that tells you the answer you're looking for without actually invading the attorney-client privilege.
>
>     MS. MARTIN: But you waive that when you bring a claim of coerced confession.
>
>     MR. FOUTRIS: Okay.
>
>     MS. MARTIN: That's why I'm asking who was the first person that he told about being coerced into giving a confession.
>
>     MR. FOUTRIS: Is that the only thing you want to know was the first person he spoke to?
>
>     MS. MARTIN: And when.
>
>     MR. FOUTRIS: Without getting into more specifics of what he said?
>
>     MS. MARTIN: Those are the two questions I'm asking.
>
>     MR. FOUTRIS: Okay. Well, let me talk to him.

With Foutris then returning to the issue and stating his view, Martin responded (id. at 281):

> Okay. Just so we're clear, I believe that that's waived when you bring that claim.

And the deposition then continued in this fashion (id. at 282):

> BY MS. MARTIN:
>
>     Q. But I'm going [sic] ask these two questions: Who was the first person you told about being coerced into giving a confession?
>
>     A. My attorney.

3

>     Q.   And was --
>
>     A.   Public defender.
>
>     Q.   Was this the same attorney who defended you during the trial?
>
>     A.   No.
>
>     Q.   Who is that public defender?
>
>     A.   His name was Birkholts.  I don't know how to spell it.  B-i-r-k-h-o-l-t-s I believe it is.
>
>     Q.   Male or female?
>
>     A.   Male.
>
>     Q.   And when did you tell Mr. Birkholts?
>
>     A.   That was in our first meeting approximately a week to two weeks after I had gotten to the County.

In brief, Martin obtained Scott's testimony by asserting that he had already waived the attorney-client privilege. And having done so--having obtained an advantage by reason of taking that position--defense counsel are estopped from reversing their field by advancing the inconsistent position now advanced in Motion 13. That motion is denied as to Scott's testimony.

As for Scott's second trial counsel, then public defender Bernard Sarley, Motion 13 takes the same position on the ground that during his deposition he "refused to answer questions regarding communications between Plaintiff and himself citing the attorney client privilege" (Dkt. 134 at 2). But on that score attorney Sarley (now Judge Sarley) was not apprised by defense

4

counsel that Scott had already waived the privilege.[1] Again defense counsel cannot take advantage of the situation created by their failure to pursue their inquiries with Sarley by informing him of Scott's waiver of the privilege. Motion 13 is denied in that respect as well.

### Motions 14 and 22 (part of Dkt. 134)

In Motion 14 defendants move "to bar Plaintiff from alleging that he was provided with ineffective assistance of counsel in his criminal case" (Dkt. 134 at 4). Relatedly, Motion 22 asks to preclude "any character evidence of Plaintiff's original criminal defense attorney, Charles Buchholz" (id. at 14).

In response Scott's counsel explains why the challenged evidence should be admitted, basically as a defense to defendants' anticipated position at trial (Dkt. 150 at 4):

> During Mr. Sarley's (now Judge Sarley) deposition, it became apparent that the Defendants will seek to impeach the Plaintiff's claims of coercion by pointing to the motions filed by his public defenders in the criminal case. In particular, they will, apparently, suggest that the Plaintiff is lying about his coercion

---

[1] It is of course black-letter law that the privilege belongs to the client, not the lawyer, so that the client controls the decision of waiver vel non. As stated in Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 24 (5th ed. 2007):

> It goes without saying that ultimately it is the client, who as the holder of the privilege, alone should be entitled to decide whether to claim the privilege or by his actions to disclose privilege-protected communication and in so doing waive the privilege that would otherwise attend it.

> because the criminal pretrial motions did not have the level of specificity regarding his claims that he later testified to (both in the criminal case and in the present matter).
>
> In that regard, it is anticipated that the Defendants will suggest to the Jury that the Plaintiff's public defenders fulfilled their obligations adequately in filing the various motions--therefore subtly hinting to the Jury that, if the Plaintiff informed the public defenders about the coercive tactics, they would surely have referenced those tactics in their pretrial motions.

In those terms the objected-to evidence would be both relevant and probative, hence admissible. If of course defendants do <u>not</u> plan to advance the argument anticipated by Scott's counsel, via either testimony or argument or both, all they need do is to commit themselves on that score and the objected-to evidence would appear to drop out of the case. For now, however, both Motion 14 and Motion 22 are denied.

<u>Motion 16 (part of Dkt. 134)</u>

This time defendants seek to preclude "all evidence regarding the trial court's reasons for making certain rulings in Plaintiff's criminal case." That motion is puzzling, given the nature of and the reasons for the Illinois Appellate Court's decision that has really validated this action as a substantive matter.[2] What aspects of the state courts' determinations and rulings should go into evidence in this case is necessarily a

---

[2] This is not of course a determination as to how the factfinding jury should resolve the contested issues in the case.

6

function of how the proofs develop at trial. For the present, then, defendants' Motion seeking broad-scale denial of such evidence is denied.

<u>Motions 17 to 20 (all part of Dkt. 134)</u>

Here is how defense counsel characterize the next four motions (in each instance the motion's caption is quoted):

> 17. Motion To Bar Evidence and Accusation that Larry Scott was Denied Right to Counsel
>
> 18. Motion To Bar Any Evidence or Argument that Larry Scott was Arrested or Detained Without Probable Cause
>
> 19. Motion To Bar Evidence and Accusation that Larry Scott was Denied Medical Care
>
> 20. Motion To Bar Evidence and Accusation that Larry Scott was Subjected to Improper Conditions of Confinement

And here is the summary beginning of Scott's response (Dkt. 150 at 7):

> As this Court is well aware, the Plaintiff's claims against the Defendants include Fourteenth Amendment Due Process claims that seek to hold the Defendants accountable for their illegal interrogation tactics. Those tactics included ignoring the Plaintiff's requests to see an attorney; ignoring his requests for medical attention; locking him in a windowless interrogation room with no sleeping surface, sink or toilet for multiple days against his will; denying him ready access to food, water and the bathroom; and demanding a quid pro quo in exchange for assistance.

In those respects Scott's counsel points to this Court's January 4 and April 8, 2010 opinions that rejected defendants' efforts to dispatch this case as a matter of law and placed the

7

parties on the road to generating the FPTO as a prelude to the trial that is to come. Because it is difficult to ascertain the respects (if any) in which the current defense motions are not at odds with those earlier determinations from which this Court sees no reason to retreat, Motions 17 through 20 are denied--at least for now. If defendants were able swiftly to explain how any portions of the current motions survive this Court's earlier rulings and thus affect the potential admissibility of evidence at trial, this Court would be prepared to take a further look.

### Motion 21 (part of Dkt. 134)

Loretta (Lori) Ciesiun ("Ciesiun") is the mother of Scott's son (they were formerly in a long-term relationship). She too was taken into custody and detained at the time that Scott was detained in October 2000. Motion 21 challenges "any evidence that Lori Ciesiun was improperly arrested or detained because such evidence is both irrelevant in violation of Fed. R. Evid. 402 and unduly prejudicial in violation of Rule 403" (Motion at 13).

Scott's response seeks to justify admission of Ciesiun's treatment as coming within the exceptions to Evid. R. 404(b). There is of course no bright-line watershed (to mix metaphors) that separates forbidden propensity evidence from permitted evidence of (for example) a pattern or modus operandi. But in this instance such evidence appears to fall on the exclusion side

8

of that divide when Evid. R. 403 balancing is applied.

Hence Motion 21 is granted. If however defendants were unwise enough to "deny that they have ever engaged in this type of conduct," as Scott posits in his response (Dkt. 150 at 10), such evidence would be considered for potential admission by way of impeachment. In consequence, Motion 21 is granted conditionally.

### Motion 23 (part of Dkt. 143)

Although defendants caption Motion 23 as seeking "to bar any evidence or argument that the identity of the confidential informant should have been disclosed," the opening sentence of that motion limits that request to a bar against "introducing any evidence or making any argument that the confidential informant's identity should have been disclosed sooner in this case or the Plaintiff's criminal case." That more limited scope is reconfirmed by defendant's final request (Motion at 3):

> Therefore, Defendants respectfully request this Court to bar any evidence or argument that the confidential informant's identity should have been disclosed earlier.

Indeed, as Scott's response points out, the confidential informant's identity <u>was</u> disclosed, and the response goes on to explain why the timing of the disclosure could be viewed as relevant to the issues in this case. That explanation confirms such relevance--that is, the tendering of that evidence to the jury for its consideration--and Motion 23 is denied.

9

<u>Motions 24 and 25 (part of Dkt. 143)</u>

These two motions continue defendants' efforts to draw the fangs from Scott's legitimate attempt to show a deprivation of his constitutional rights.  This time defense counsel oppose any evidence that would suggest the inadequacy of the investigation of the murder of Jesus Villalobos.

It is frankly difficult to be patient with such repeated efforts to sanitize this litigation by keeping out of the evidence to be presented for jury consideration matters that a rational jury might find probative in considering Scott's claims. This Court stresses that nothing said here should be misunderstood as expressing any view of its own as to how the jury should resolve the case--what would clearly be improper would be to accept defendants' version as the only one that should go to the jury, excluding relevant evidence proffered by Scott.

It is not plain at this point just what evidence Scott may proffer in this area, and this Court will rule at trial as and when Scott seeks to introduce such evidence, and as and when defense counsel interpose proper objections to the introduction. But for the present Motions 24 and 25, which seek to cut Scott off at the pass, are denied.

<u>Motion 26 (part of Dkt. 143)</u>

This time defendants move "to bar evidence of lost wages,"

10

pointing in part to Scott's having "failed to produce supporting documentation or evidence during discovery," so that "any such claim would be speculative." Scott responds somewhat lamely that "he did not have any such items in his possession or control" and that he twice offered to execute any documents to enable defense counsel to obtain such documentation from Scott's former counsel. But the burden of proving damages is of course on Scott as plaintiff, not on defendants--and if it would indeed have been easy (as Scott's counsel urges) for defendants to take Scott up on his asserted offer, it surely would have been just as easy (if not easier) for Scott to obtain the same information to buttress his claim.

It is true (as Scott argues) that expert testimony is not essential to proof of damages regarding lost wages, but here it is unclear whether Scott can produce other admissible evidence that underpins such a claim. Accordingly Motion 26 is granted for now, with the possibility of revisiting the issue at trial if Scott provides any such competent evidence.[3]

### Motion 28 (part of Dkt. 143)

Finally, Motion 28 asks "to bar or limit opinions of Richard Ofshe" ("Ofshe"). This opinion will consider each of the Motion 28 objections to Ofshe's testimony against the backdrop of

---

[3] If Scott intends to do that, he would have to show that he has been properly responsive to defendants' discovery requests in that area, a matter on which this Court has no information.

the obvious relevance of legitimate testimony to address the obvious question by lay jurors as to why and how a suspect's confession that he has assertedly committed a crime may be obtained improperly, so as to cause rejection of that claimed confession by a court.

In that respect Ofshe has been held to meet the <u>Daubert-Kumho</u> standards by a wide margin on numerous occasions, based on his qualifications as described in detail at pages 1 through 3 of his report (attached as Ex. A to Dkt. 143) and as succinctly summarized at pages 1-2 of Scott's response (Dkt. 152). That response quotes an excerpt from <u>United States v. Hall</u>, 974 F.Supp. 1198, 1205 (C.D. Ill. 1997), with which this Court agrees. Indeed, even though defendants have framed their motion alternatively in terms of an outright bar and a limitation on Ofshe's testimony, the text of their submission really deals with argued-for limitation rather than outright exclusion.

In those terms Ofshe may certainly testify as to (1) his opinions described on page 5 of his report under the subheading "The Phenomenon of False Confessions," as well as (2) how he finds that the competing versions of Scott and Detective Fassl fit or do not fit "the model of interrogation influence developed in my published articles." That is quite different from Ofshe's opining on the credibility of the two witnesses, as defense counsel would have it--instead his evaluations for the most part

12

accept each one's testimony for what it is, properly leaving it to the jury to make the credibility determination and to decide (1) whether to accept Ofshe's model and (2) how that plays out in terms of the jury's credibility determination.

It is true that Ofshe's report may in part cross over into an expression of incredulity at Fassl's account. To the extent that is the case, this Court will not permit that line to be crossed by Ofshe's trial testimony--a matter that can be addressed either by pinpoint objections advanced for this Court's preliminary ruling or, as tends to be preferable, by this Court's ruling on such objections at the time and in the context of the trial itself.

As for defendants' objections that "portions of Ofshe's proffered testimony are obvious to lay jurors" (Dkt. 143 at 11), their view is unduly restrictive. Defendants' examples do not deal fairly with Ofshe's proposed testimony, a matter addressed adequately and persuasively in Scott's response at Dkt. 152 pages 5 through 8.

Lastly, defendants' contentions that "portions of Ofshe's proffered testimony exceed the scope of his expertise" (Dkt. 143 at 12-13) mischaracterize his report. Scott's response (Dkt. 152 at 8-11) explains persuasively the appropriateness of Ofshe's report (and hence of his anticipated testimony conforming to that report).

13

In sum, defendants' objections to Ofshe's proposed opinion testimony fail, except to the limited extent explained here. Motion 28 is therefore denied, save for that limited exception.

## Conclusion

To summarize this opinion's rulings on defendants' numerous motions in limine:

1. Motions 17 (part of Dkt. 134) and 27 (part of Dkt. 143) have been withdrawn.

2. Motion 21 (part of Dkt. 134) has been granted conditionally, while Motion 26 (part of Dkt. 143) has been granted subject to Scott's possible proffer of evidence at the time of trial.

3. Motions 13, 14, 16 through 20 and 22 (all part of Dkt. 134) and 23 and 28 (both part of Dkt. 143), with Motion 28 being subject to a limited exception, have been denied.

To recast the rulings in terms of the two docket numbers (due to defendants' having grouped several motions in each), each of Dkts. 134 and 143 has been withdrawn in part, granted in part and denied in part.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 3, 2010

14